**THE UNIVERSITY OF HOUSTON, Appellant,**

v.

**Stephen BARTH, Appellee.**

**No. 01–04–00828–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 30, 2005.

Peter B. Plotts, III, Assistant Attorney General, Austin, TX, for Appellant.

Richard A. Battaglia and J.W. Beverly, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices HIGLEY and BLAND.

## OPINION

LAURA CARTER HIGLEY, Justice.

This is an interlocutory appeal of the trial court's denial of appellant's, the University of Houston (UH), plea to the jurisdiction.[1] Appellee, Stephen Barth, a

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon 1997 & Supp.2004–

tenured professor at the UH Conrad N. Hilton College of Hotel Management (Hilton College), filed suit against UH under the Whistleblower Act,[2] contending that his supervisor retaliated against him after Barth reported alleged accounting violations.

In seven issues, UH contends that the trial court erred in denying its plea and supplemental plea to the jurisdiction because (1) Barth did not timely file all of his grievances, (2) Barth did not timely file suit, and (3) several of the acts complained of were not "adverse personnel actions" as defined in the Whistleblower Act.

### Factual & Procedural Background

Barth is a tenured professor at Hilton College. In 1998, one of Barth's colleagues told him that Alan Stutts, Dean of Hilton College, was pressuring him to perform what he termed "questionable" accounting transactions and practices. Barth reported these alleged violations to (among others) UH Provost Ed Sheridan and UH's general counsel. On January 14, 2000, Barth discovered he had been denied a 1999 merit raise he contends he deserved under the merit evaluation guidelines. Barth filed a grievance on March 10, 2000. On August 17, 2000, two weeks after receiving final notice that he would not be given a 2000 merit raise, Barth filed his second grievance. On November 21, 2000, Barth filed a third grievance. Eventually, the second and third grievances were consolidated into a single grievance. Barth complained that, as retaliation for reporting accounting irregularities, Stutts: (1) attempted to breach Barth's supplementary compensation agreement; (2) intimidated Barth's assistant and other faculty members with whom Barth worked closely; (3) denied Barth travel money; (4)

wrote an arbitrary and capricious evaluation of Barth's performance; (5) withdrew support for Barth's academic initiatives; (6) encouraged an associate to file a false discrimination claim against him; (7) alienated the students and faculty from Barth; (8) excluded Barth from an on-line graduate program; (8) excluded Barth from internal and external communications; and (9) defamed Barth before students and faculty.

The provost responded in part to the first grievance on May 31, 2000 and responded to the second and third grievances, and the issues remaining from the first grievance, in a letter dated June 5, 2001. Barth filed suit on July 5, 2001. However, correspondence between Barth and the provost continued until the fall. Although the provost noted in his June 5 letter that "[S]ince you have chosen not to appeal any of the Grievance Committee recommendations to me, I now regard this grievance procedure as ended," Barth responded on June 18 with a request for just such an appeal. In a letter dated September 5, 2001, the provost noted, "[I]n response to your statement that the grievance process has been concluded, I wish to state it is not concluded, at least not due to any action or decision on my part."

There was no further action taken in regard to Barth's grievances and the suit went forward. After the trial court denied UH's plea and supplemental plea to the jurisdiction, this interlocutory appeal ensued.

### Plea to the Jurisdiction

 A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction.

---

2005) (authorizing interlocutory appeal of denial of plea to jurisdiction).

**2.** *See* TEX. GOV'T CODE ANN. § 554.002 (Vernon 2004).

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). Subject-matter jurisdiction is essential to the authority of a court to decide a case. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). Governmental immunity from suit defeats a trial court's jurisdiction and so it may be raised by a plea to the jurisdiction. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex.1999).

### Nature of Provisions of Whistleblower Act

As a preliminary matter, we address Barth's contention that this Court has no jurisdiction to consider this appeal because the trial court could not entertain UH's plea to the jurisdiction as a matter of law. Based on the Texas Supreme Court's decision in *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex.2000), in which the Supreme Court determined that the failure to allege and prove a statutory prerequisite to a statutory cause of action was not a jurisdictional defect, Barth contends that the limitations provision and grievance requirements of the Whistleblower Act are likewise not jurisdictional.

█ In making this argument, Barth relies on authority in which our sister appellate courts held that the provisions of the Whistleblower Act are *not* jurisdictional and asks us to overrule this Court's decision to the contrary in a case directly on point here. *See Tex. S. Univ. v. Carter*, 84 S.W.3d 787, 792 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (holding that statutory prerequisite that plaintiff in Whistleblower action timely initiate grievance before filing suit is jurisdictional issue that may be challenged by plea to jurisdiction). We recognize that other courts of appeal have applied *Kazi* to the Whistleblower Act and held that its statutory prerequisites are not jurisdictional. *See, e.g., Univ. of Houston v. Elthon*, 9 S.W.3d 351 (Tex. App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.); *Castleberry Indep. Sch. Dist. v. Doe*, 35 S.W.3d 777 (Tex.App.-Fort Worth 2001, pet. dism'd w.o.j.); *Tex. Dep't of Mental Health & Mental Retardation v. Olofsson*, 59 S.W.3d 831 (Tex.App.-Austin, 2001, pet.dism'd). However, none of the cases addressing whether the Whistleblower Act's provisions are jurisdictional has been reviewed by the Texas Supreme Court. In *University of Texas Southwestern Medical Center at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 360 (Tex.2004), the Texas Supreme Court, in addressing whether certain provisions of the Tort Claims Act[3] were jurisdictional, distinguished a statutory presentment provision from a statutory exhaustion of remedies provision, noting that an exhaustion requirement seeks to ensure that "the appropriate body adjudicates the dispute—the hallmark of a jurisdictional statute." *Id.* at 361 (citing *Essenburg v. Dallas County*, 988 S.W.2d 188, 189 (Tex.1998)). The Whistleblower Act requires *initiation* of remedies via the governmental entity's grievance or appeal procedure before a party may file suit, but does not require *exhaustion* of remedies. *See* Tex. Gov't Code Ann. § 554.006 (Vernon 2004). Thus, whether the Act's requirements are jurisdictional is open to question. But this question has not yet been directly answered; rather, the court has expressly refrained from answering it. *See Univ. of Tex. Med. Branch at Galveston v. Barrett*, 159 S.W.3d 631, 632 (Tex.2005) (observing "[W]e need not decide here whether the failure to meet these requirements [of section 554.006] deprives the court of jurisdiction over the action."). Accordingly, *Carter*, which is directly on point and in which this Court held—albeit for reasons not ap-

**3.** Tex. Civ. Prac. & Rem.Code Ann. §§ 101.021– .022 (Vernon 1997).

plicable here—that the requirements of section 554.006 are jurisdictional, governs disposition of the issue in the case before us. *See Carter,* 84 S.W.3d at 792; *accord Harris County v. Lawson,* 122 S.W.3d 276, 281 (Tex.App.-Houston [1st Dist] 2003, pet. denied) *disapproved of on other grounds by Barrett,* 159 S.W.3d at 633) (following holding in *Carter* and reiterating that *Kazi* did not overrule [*Univ. of Texas Med. Branch v.*] *Hohman* [6 S.W.3d 767 (Tex.App.—Houston [1st Dist.] 1999)]).

We therefore hold that the limitations provisions in the Whistleblower Act are jurisdictional; thus, we examine UH's plea to the jurisdiction to determine whether the trial court erred in denying the plea.

### Standards of Review

■ Because subject-matter jurisdiction presents a question of law, we review the district court's decision de novo. *Mayhew,* 964 S.W.2d at 928. In reviewing a trial court's ruling on a plea to the jurisdiction, we do not look at the merits of the case; rather, we construe the pleadings in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See Bland,* 34 S.W.3d at 555 (confining evidentiary review to evidence that is relevant to jurisdictional issue). When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in decid-

ing whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable. *Id.* at 554. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue should be resolved by the fact finder. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227–28 (Tex.2004).

■ The Whistleblower Act prohibits retaliation against public employees who, in good faith, report violations of law by their employers. TEX. GOV'T CODE ANN. § 554.002 (Vernon 2004). Because the statute is remedial in nature, we construe its provisions liberally to effectuate its legislative purpose—to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing. *See Castaneda v. Tex. Dep't of Agric.,* 831 S.W.2d 501, 503 (Tex.App.-Corpus Christi 1992, writ denied).

### Time Limits

■ In its second, fourth, and fifth issues, UH contends Barth did not timely file his grievances. In making this argument, UH focuses solely on the date that each alleged adverse personnel action occurred. However, the Whistleblower Act requires an employee, before filing suit, to initiate action under the grievance procedure of the employer before filing suit, "not later than the 90th day after the date on which the alleged violation of this chapter: (1) occurred; or (2) was discovered by the employee through reasonable diligence." TEX. GOV'T CODE ANN. § 554.006(a), (b). Barth argues that, at a minimum, there is a fact issue as to whether Barth should have filed his grievances earlier. We agree. The continuing-violation doc-

trine has been applied to the Whistleblower Act. *See Univ. of Tex.-Pan Am. v. De Los Santos*, 997 S.W.2d 817, 820 (Tex. App.-Corpus Christi 1999, no pet.). Under this doctrine, the focus is on what event, in fairness and in logic, should have alerted the average layman to protect his rights. *See Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1560 (5th Cir.1985). There are sufficient factual allegations in Barth's pleadings that could invoke the continuing-violation doctrine; whether that doctrine applies and which acts triggered the 90–day limitations period are issues that should be resolved by the trier of fact. *See Hill v. Burnet County Sheriff's Dep't*, 96 S.W.3d 436, 442 (Tex.App.-Austin 2002, pet. denied) (noting that court, in reviewing ruling on plea to jurisdiction, only determines whether plaintiff's pleadings are sufficient to invoke jurisdiction).

■ In its first issue, UH argues that Barth did not timely file suit. The Whistleblower Act provides that, "if a final decision is not rendered before the 61st day after the date procedures are initiated ... the employee may elect to (1) exhaust the applicable procedures" and sue not later than the 30th day after exhausting them or (2) terminate the procedures initiated and sue within the time remaining of the 90–day limitations period. *See* TEX. GOV'T CODE ANN. § 554.006(d). Here, 90 days had long since elapsed, thus Barth's only choice was to bring suit not later than the 30th day after exhausting the grievance procedures.

Although UH contends that the procedure was exhausted on May 31, 2000, when the provost sent his initial letter to Barth, the record does not entirely support this contention. It was not until the letter of June 5, 2001 that the provost wrote, "I now regard this grievance procedure as ended." A reasonable inference from this comment is that the grievance procedure

was not ended before the provost wrote this letter. Because appellant filed suit on July 5, therefore, his suit was timely. If the continuing correspondence between Barth and the provost did not prolong the process, and if the provost's remark in his letter, dated September 5, 2001, that "I wish to state it [the grievance procedure] is not concluded, at least not due to any action or decision on my part" likewise had no effect on whether the procedure was exhausted, UH still cannot prevail. In *Lawson*, this Court held that, as statutory prerequisites to filing a Whistleblower lawsuit, an employee who timely initiates the grievance procedure is entitled to file suit after giving the employer at least 60 days to reach a final decision. 122 S.W.3d at 283–84. Barth filed suit after 60 days had elapsed, and 30 days after receiving a letter in which the provost decreed the process finished.

We hold that the fact issues present in the questions of timely grieving and timely filing in this case precluded the trial court from granting the plea to the jurisdiction on the basis of limitations. *See Miranda*, 133 S.W.3d at 227–28 (holding that if evidence creates fact question regarding jurisdiction, trial court cannot grant plea to jurisdiction, and the fact issue should be resolved by fact finder).

We overrule the first, second, fourth, and fifth issues.

### Adverse Personnel Actions

■ In its third and sixth issues, UH contends that the trial court lacked subject-matter jurisdiction because the actions about which Barth complained were not adverse personnel actions. In its seventh issue, it contends that sovereign immunity shields it from liability for defamation.

The Whistleblower Act defines an adverse personnel action as "an action that affects a public employee's compensation,

promotion, demotion, transfer, work assignment, or performance evaluation." TEX. GOV'T CODE ANN. § 554.001(3) (Vernon 2004). This is a broad definition, as has been recognized by the courts. *See, e.g., Tex. Dep't of Mental Health & Mental Retardation v. Rodriguez*, 63 S.W.3d 475, 481 (Tex.App.-San Antonio 2001, pet. denied) (rejecting state agency's narrow construction of what constituted adverse personnel action). Any of the acts about which Barth complained in his grievances, and which underlie his suit, could reasonably be construed by a jury to be acts that, although only indirectly in some instances, "affected" Barth's "compensation, promotion, demotion, transfer, work assignment, or performance evaluation." We further note that Barth did not file a cause of action for defamation; rather he contended that his supervisor's defamatory remarks were one of the actions that affected his employment.

As in the question of limitations, which (if any) of the acts about which Barth complains constituted adverse personnel actions is a contested fact issue that should be resolved by the trier of fact. *See Hill*, 96 S.W.3d at 442 (court did not need to determine whether retaliatory acts constituted constructive discharge, thus were not adverse action; court needed only to determine whether pleadings invoked trial court's jurisdiction); *see also Miranda*, 133 S.W.3d at 227–28.

We overrule the third, sixth, and seventh issues.

We affirm the trial court's denial of UH's plea to the jurisdiction and supplemental plea to the jurisdiction.

Justice BLAND concurring.

JANE BLAND, Justice, concurring.

This case presents the question of whether a plaintiff's failure to comply with the Texas Whistleblower Act's statutory requirements deprives a trial court of its subject matter jurisdiction. In *Texas Southern University v. Carter*, this court concluded that it does. 84 S.W.3d 787, 792 (Tex.App.-Houston [1st Dist.] 2002, no pet.). The emerging jurisprudence of the Texas Supreme Court, however, strongly signals that it does not. Instead, absent a framework in which statutory requirements expressly define a trial court's power to hear the subject matter, such requirements are not jurisdictional, but rather operate only as elements necessary to a recovery.

The trial court in this case did not err in denying the university's pleas to the jurisdiction because the Whistleblower Act does not require exhaustion of administrative remedies—or any sort of administrative decision, for that matter—before filing suit in state district court. TEX. GOV'T CODE ANN. § 554.006 (Vernon 2004). The statute does not expand or limit a trial court's power to hear the subject of the lawsuit. The university's complaints about the timing of Barth's initiation of grievance proceedings thus are not attacks on the trial court's subject matter jurisdiction, but instead are arguments against its employee's right to a recovery under the Act. Given the Texas Supreme Court's recent decisions, this court should overrule its holding in *Carter*, instead of following it, because the grievance initiation timetables in the Act are not jurisdictional. I would affirm the trial court on this ground, and therefore I respectfully concur.

*The Statutory Language*

Pursuant to section 554.006, entitled "Use of Grievance or Appeal Procedures," a public employee seeking a recovery under the Whistleblower Act must initiate grievance or appeal procedures available through his employer "before suing" under the Whistleblower Act. *See* TEX. GOV'T CODE

ANN. § 554.006(a). The section also requires an employee to invoke such grievance procedures within 90 days after a violation of the statute occurs, or is discovered by, the employee. *Id.* § 554.006(b). The time an employee uses in pursuing a grievance or appeal procedure is excluded from the statute of limitations associated with the Act. *Id.* § 554.006(c).

But a plaintiff is not required to exhaust his grievance or appeal process before filing suit. Section 554.006 further provides that, if the grievance or appeal procedure does not result in a final decision within 60 days of its initiation, then an aggrieved employee may elect either to (1) exhaust the procedure, in which case he must sue within thirty days of exhaustion; or (2) terminate the procedure and sue within the Act's standard limitations period. *Id.* § 554.006(d). The statute thus does not forbid the trial court from deciding matters before it unless or until another tribunal reaches a decision; rather, the statute expressly contemplates that grievance proceedings may be abandoned and never conclude. Nor does the statute bind a trial court with the decision of a grievance or appeal process, in ways that a trial court is bound, for example, upon hearing a case appealed from an administrative tribunal. *See, e.g.,* TEX. GOV'T CODE ANN § 2001.174 (Vernon 2000) (defining judicial review of state agency administrative decisions).

*Supreme Court Jurisprudence*

In *Dubai Petroleum Co. v. Kazi,* the Texas Supreme Court held that courts should not assume that all statutory requirements are jurisdictional requirements. 12 S.W.3d 71, 76 (Tex.2000). The Court observed that a lack of jurisdiction deprives the court of the power to act (other than to determine that it has no jurisdiction), and to ever have acted. *Id.* at 74–75. Consequently, any jurisdictional

irregularity subsets a judgment to attacks upon its finality, even if no party raised the issue at or before the time of judgment. *Id.* at 76. In *Kazi,* the court held that the Legislature did not intend the statutory requirements for suing in Texas for an injury or death that occurred in a foreign country to be jurisdictional. *Id.* at 77.

The Texas Supreme Court applied its analysis in *Kazi* to the notice provision of the Tort Claims Act in *University of Texas Southwestern Medical Center at Dallas v. Loutzenhiser,* 140 S.W.3d 351 (Tex.2004). There, the court reiterated the principle that, absent the intent of the Legislature to fortify a statutory requirement with a jurisdictional effect, none should be assumed in construing a statute. *See id.* at 359.

Earlier this year, in *The University of Texas Medical Branch at Galveston v. Barrett,* 159 S.W.3d 631(Tex.2005), the Texas Supreme Court stepped toward harmonizing the Whistleblower Act with its jurisprudence in *Kazi* and *Loutzenhiser.* There, the court held that, section 554.006 does not require an employee to exhaust the grievance or appeal procedures before filing suit, and therefore a trial court could abate an action filed prematurely under the Act. *Id.* at 632–33. It expressly noted that an abatement protected the purpose of the statute whether or not its grievance initiation requirements are jurisdictional in nature. *Id.* at 633. Of course, an abatement is an exercise of a court's power that presumes jurisdiction *exists,* and includes the premise that the court will entertain the lawsuit to its final outcome at a later date. *See Butnaru v. Ford Motor Company,* 84 S.W.3d 198, 207–08 (Tex.2002) The court's conclusion that an abatement protects the purpose of the statute also lends support to a view that the statute was never intended to be an arbiter of trial

court jurisdiction in the first place. Rather, the Act establishes parameters under which a recovery may be sought—much like a limitations statute, or a notice provision under the Tort Claims Act. *See Loutzenhiser*, 140 S.W.3d at 359–60.

And, in *Barrett*, the Texas Supreme Court included a footnote expressly disapproving of cases that have held "to the contrary" including one from this court that relied upon *Carter*. *See Barrett*, 159 S.W.3d at 633 n. 6 (expressly disapproving of *Harris County v. Lawson*, 122 S.W.3d 276, 281–84 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (en banc)). The Texas Supreme Court's disapproval of *Lawson* includes a parenthetical noting that our holding in that case suggests that the statutory prerequisites of the Whistleblower Act are jurisdictional. The footnote (with page references to our jurisdictional discussion) intimates that our "suggestion" in *Lawson* is wrong. Otherwise, the court need not have *disapproved* of it—after all, the plaintiff in *Lawson* was held to have satisfied the statutory requirements at issue in that case. *Lawson*, 122 S.W.3d at 284. Together with *Lawson*, the Texas Supreme Court similarly disapproved of a decision from the Waco Court of Appeals that held the Act's requirements to be jurisdictional. *Barrett*, 159 S.W.3d at 633 n. 6. Accordingly, I respectfully disagree with the majority that *Lawson* was "disapproved of on other grounds."[1]

### Carter Lacks Vitality Post–Loutzenhiser

Our court decided *Carter* shortly after the Texas Supreme Court decided *Kazi*. At the time, we declined to apply the principles the Texas Supreme Court enunciated in *Kazi*—a wrongful death action—to a case involving an action under the Whistleblower Act.[2] At the time, we read nothing in *Kazi* to indicate an intent to broadly include other statutes. *See Carter*, 84 S.W.3d at 790. Even at the time, such a narrow interpretation was questionable, given the Texas Supreme Court's express disavowal of longstanding Texas jurisprudence that tilted toward reading statutory requirements as tantamount to jurisdictional ones. *See Kazi*, 12 S.W.3d at 76 (expressly overruling *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084 (1926), observing that better policy is to preserve finality of judgments when such reading is not inconsistent with statutory language). *Loutzenhiser* placed the argument that *Kazi* was confined to a narrow set of facts to rest. *See Loutzenhiser*, 140 S.W.3d at 358 (holding that, in viewing statutory language generally, Legislature is bound to know consequences of making statutory requirement jurisdictional one, and courts must analyze whether it was Legislature's intent to confer such consequences). With the benefit of the Texas Supreme Court jurisprudence that has emerged post-*Carter*, we can no longer rely upon the distinction that it drew from *Kazi*, for we now

---

1. As the majority observes, the Austin, Fort Worth, and our sister court here in Houston disagree with our holdings that the statutory requirements of the Whistleblower Act are jurisdictional. *See Univ. of Houston v. Elthon*, 9 S.W.3d 351 (Tex.App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.); *Castleberry Indep. Sch. Dist. v. Doe*, 35 S.W.3d 777 (Tex. App.-Fort Worth 2001, pet. dism'd w.o.j.); *Tex. Dep't of Mental Health & Mental Retardation v. Olofsson*, 59 S.W.3d 831 (Tex.App.-Austin 2001, pet. dism'd). The Texas Supreme Court did not disapprove of these cases in *University of Texas Medical Branch at Galveston v. Barrett*, 159 S.W.3d 631 (Tex.2005).

2. In *Carter*, we describe a wrongful death action as a "common law" cause of action as a means of distinguishing it from the Whistleblower Act. *Tex. S. Univ. v. Carter*, 84 S.W.3d 787, 791 (Tex.App.-Houston [1st Dist.] 2002, no pet.) Although a wrongful death action is one of personal injury in character, it is a statutory cause of action. TEX. CIV. PRAC. & REM.CODE ANN. § 71.002 (Vernon 1997).

know that statutory elements are not synonymous with jurisdictional elements. As the distinction *Carter* relies upon is no longer valid, we should not continue to follow it, and refrain from analyzing whether the Whistleblower Act's grievance initiation precepts are inherently jurisdictional.

*Application of the Principles in Kazi and Loutzenhiser*

Such an analysis would reveal that the grievance initiation provision of the Whistleblower Act, like the notice provision of the Tort Claims Act, is not one in which the Texas Legislature defines the power of the trial courts to hear and decide cases, nor to require they be met as a condition precedent to waiver of immunity. The Act merely requires claimants to initiate a dispute resolution process, and to comply with prescribed time periods for filing suit—a specialized limitations provision of sorts. Like the notice provision of the Tort Claims Act, a grievance initiation process notifies the potential defendant of the claim against it and facilitates early resolution, if possible, of the dispute. The statute does not require the process to continue or even to conclude with a decision. It does not bind the trial court with findings, or establish any sort of judicial review over the final decision of the grievance process, thus expressing no preference "to have the agency resolve disputed issues of fact and policy." *See Loutzenhiser,* 140 S.W.3d at 361 (quoting *Essenburg v. Dallas County,* 988 S.W.2d 188, 189 (Tex.1998)). Hence, the statute imposes no express jurisdictional constraints. Given the preference for the finality of judgments, and the Legislature's knowledge that, absent express definition, courts will not presume a statute to be jurisdictional, nothing about the Act indicates a legislative intent to define the *power* of the trial courts to hear and decide these cases, as opposed to defining the substantive and procedural elements that must be met to obtain a *recovery.* *See id.*

### CONCLUSION

The grievance initiation requirements of the Whistleblower Act do not deprive a trial court of its subject matter jurisdiction should a claimant fail to comply with them. The trial court therefore did not err in denying The University of Houston's pleas to the jurisdiction, and I concur in the judgment.